**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roy Warden, <br>     Plaintiff, <br> v. <br> Bob Walkup, et al., <br>     Defendants. | No. CV-13-00283-TUC-DCB <br> (Lead Case0 |
| Roy Warden, <br>     Plaintiff, <br> v. <br> Bob Walkup, et al., <br>     Defendants. | No. CV -13-01067-TUC-DCB <br> (Consolidated Case) <br><br> **ORDER** |

      Plaintiff filed these actions in 2013. On August 8, 2013, this Court dismissed the claims related to the Third Amended Complaint (TAC), pursuant to Rule 8 in a screening Order. (Docs. 6 and 7.) On April 1, 2014, the Court granted summary judgment for Defendant Robinson on the only remaining claim and entered judgment for the Defendants. (Docs. 32 and 33.) On October 5, 2016, the Ninth Circuit Court of Appeals, affirmed the grant of summary judgment for Robinson, but reversed and remanded the Rule 8 dismissal. On remand, this case was consolidated with CV 13-1067 TUC DCB. (Order (Doc. 58)). On June 23, 2018, the Plaintiff filed the TAC (Doc. 106), alleging that on September 13,

2011, the Defendants violated his First Amendment right to free speech, pursuant to the Rules for Speech for speaking at a Tucson City Council meeting, and the Fourth Amendment right to be free from arrest without probable cause when they arrested him for speaking at a Council meeting.

Plaintiff asks the Court to award him damages for these alleged constitutional violations, which he frames in terms of an illegal arrest or seizure in retaliation for exercising his right to free speech. He also alleges that Defendant Kozachik used "stern words" to humiliate and embarrass him on September 7, 2011, in retaliation for exercising his First Amendment right to speak before the City Council. The allegedly protected speech included charges of cronyism and other public ills, with the specific subject of the alleged September 7, 2011, violation being speech accusing the City of improperly using public money to satisfy the punitive portion of a damage award issued against the City of Tucson Police Department and Police Chiefs Doug Smith and Richard Miranda,[1] *Gilmartin v. City of Tucson,* CV 00-352 TUC DCB. (TAC 25-29, 32-36, 41-44.)

In Plaintiffs' Motion for Summary Judgment, the Plaintiff asks the Court to issue a declaratory judgment that the Rules for Speech applied on September 13, 2011, and subsequently amended, effective February 7, 2012, are unconstitutional. (Doc. 151.)

Simultaneously, the City Defendants seek summary judgment. The City Defendants assert that Plaintiff's removal from the city Council meeting was constitutional, and therefore the Rules for Speech in effect at that time, as applied, were constitutional regardless of any facial infirmity, which Defendants do not concede. The Defendant argues the Plaintiff lacks standing to seek declaratory judgment related to the constitutionality of the Rules of Speech, amended effective February 7, 2012, because they have never been applied to him, and he has since continued to address the City Council under the amended Rules of Speech without incident. Finally, the individually named Defendants seek summary judgment based on the doctrine of qualified immunity. (Doc. 152.)

---

[1] By the time of the alleged constitutional violation at issue in this case, Richard Miranda, was the Acting City Manager.

For the reasons stated below, the Court finds that Defendants are entitled to summary judgment as a matter of law, and the Plaintiff is not.

The Plaintiff has asked for oral argument on the dispositive motions. The Court denies the Plaintiff's request for oral argument because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions, and oral argument will not aid the court's decisional process which is entirely based on a question of law. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999) (explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required). Additionally, due to the Covid-19 policy to limit hearings to only proceedings deemed necessary, (General Order 20-17), the Court denies the Plaintiffs' request for oral argument.

1. Rules of Speech for Tucson City Council meetings.

The City of Tucson, Mayor and Council Rules and Regulations M9, Participation by Employees and Public, Orderly Conduct" (Rules of Speech) provided in relevant part:

> Citizens, attending meetings shall observe rules of propriety, decorum and good conduct. Any person making *personal, impertinent, or slanderous remarks, or who becomes boisterous* while addressing the governing body may be removed by the sergeant at arms if directed by the chairman [(Mayor)].

(Warden Response, Rules of Speech, printed September 28, 2006 (Doc. 159-4) at 15-16)[2](emphasis added).

The City of Tucson, Mayor and Council Rules and Regulations M10, Participation by Employees and Public, Orderly Conduct (Rules of Speech), effective February 7, 2012, provides;

> Each person who addresses the Mayor and Council during any item, including a scheduled Call to the Audience, shall do so in an orderly manner and shall not make any remarks that are *profane obscene, or defamatory, and shall not make any remarks or gestures that are threatening towards any person. In addition, no speaker or person attending a meeting shall engage in conduct that disrupts or otherwise impedes the orderly conduct of the meeting*. . . . the Chair may . . . direct a law enforcement officer acting as the Sergeant at Arms to remove the person whose conduct is out of order.

---
[2] Page citations are to CM/ECF pages.

*Id.,* Rules of Speech, printed August 4, 2015 (Doc. 159-9) at 15 (emphasis added).

Federal courts are courts of limited jurisdiction and "possess only that power [to hear cases and controversies] authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994). The presumption is, therefore, that the cause lies outside the Court's jurisdiction unless the party asserting jurisdiction carries its burden of establishing the contrary. *Id.; Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010).

Under Article III, § 2 of the United States Constitution, the party claiming jurisdiction has the burden of proving: (1) he "suffered a concrete and particularized injury that is either actual or imminent," (2) "the injury is fairly traceable to the defendant," and (3) "it is likely that a favorable decision will redress that injury." *Massachusetts v. Environmental Protection Agency*, 549 U.S. 497, 498 (2007); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Kokkonen*, 511 U.S. at 377; *Chandler*, 598 F.3d at 1122. A district court accepts all factual allegations in the complaint as true and construes them in the favor of the complaining party. *Chandler*, 598 F.3d at 1121 (citing *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002)); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 (9th Cir. 2011). A fear of future harm that is only subjective is not an injury or threat of injury caused by the defendant that can be the basis of an Article III case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

In *Lyons,* the plaintiff complained that Los Angeles police officers, without provocation, applied a chokehold during a routine traffic stop that resulted in Lyons losing consciousness and suffering permanent damage to his larynx. *Id.* In Lyons, there was no issue regarding his damage claim for injury sustained during the alleged unconstitutional excessive use of force for the chokehold, the court only considered whether he failed to demonstrate a case or controversy for injunctive relief. It held he lacked standing because he did not establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer who would illegally choke him into

unconsciousness without any provocation. Because chokeholds were authorized only to counter resistance to an arrest, any future threat to Lyons from such police conduct would be no more real than the possibility that he would again have an encounter with the police and that he would either illegally resist arrest or the officers would disobey their instructions and again render him unconscious without any provocation. The Court held there was no standing for the claim because of the speculative nature of his assertion that he would again experience injury as the result of the challenged practice even if it continued. *Id.* at 109-110.

It is undisputed that the Plaintiff has continued to speak at City Council meetings since 2012. Warden does not allege that he suffered any injury from the Rules of Speech, amended effective February 7, 2012. Warden argues, instead, that the "the 'new' rules for speech before the Mayor and Council suffer the identical infirmities as the old rules because they allow the Mayor to apply *subjective standards* and allow commentary he likes and to disallow commentary he dislikes irrespective as to whether the commentary inspires audience disruption, . . .." (Warden Response (Doc. 159-2) at 7.) Defendants are correct that the Court does not need to conduct this analysis for the 2012 Rules of Speech. The Plaintiff lacks standing to challenge the constitutionality of the amended Rules of Speech, effective February 7, 2012 because he has suffered no personal injury pursuant to them. Warden lacks standing for declaratory relief on his facial challenge to the 2012-amended Rules of Speech because his claim of future injury is entirely speculative.

1. <u>The Rules of Speech as applied to Warden did not violate his constitutional right to free speech: there was no retaliatory arrest and no seizure under the Fourth Amendment.</u>

The Defendants assert the Rules of Speech are facially valid but that the Court does not need to reach this question because "the 2011 language can only be facially unconstitutional if 'it is unconstitutional in every conceivable application,' . . . [therefore] if applied constitutionally to remove Warden from the Council meeting, it is equally facially valid. (City Response (Doc. 155) at 3 (quoting *Forti v. City of Menlo Park,* 146

- 5 -

F.3d 629, 635 (9th Cir. 1998)). The Court finds for the reasons explained below that the Rules of Speech were facially constitutional and constitutional as applied.

The facts as alleged by the Plaintiff are as follows:

> On or about September 13, 2011, (during the "Call to the Audience" portion of the Tucson Mayor and Council meeting), when Plaintiff started to read from the Gilmartin trial transcript: . . . Defendant Walkup directed Defendants Couch and Sholl to arrest Plaintiff (while Plaintiff was still lawfully addressing the Mayor and Council, and to remove him from the meeting.

(Warden Decl. (Doc. 151-1) at ¶PSOF ¶3 (citing Exhibit 2: Transcript of Record (TR) Meeting Video 9/13/11 (Doc. 151-5) at 4-7)).

The September 13, 2011, Tucson City Council meeting was video recorded, and the recording reflects the following relevant and undisputed facts.

Before the Call to the Audience at the September 13, 2011 meeting, Mayor Walkup announced his desire for a new emphasis on civility, dignity, respect, and decorum at Call to the Audience and public hearings and had the City Attorney, Defendant Rankin read the Rules of Speech at issue in this case. (DSOF (Doc. 153) ¶¶29-30 (citing Meeting Video 4:08-6:21 [9/13/11])).

Warden attended the September 13 meeting and was the first speaker at Call to the Audience. (DSOF 31). Warden referenced Defendant Kozachik's comments from the prior September 7, 2011, Council meeting, which he describes here as "stern words," intended to retaliate for Plaintiff's exposure of various alleged unlawful acts committed by Defendants and to humiliate and embarrass him to deter him from exercising his First Amendment right to free speech. (TAC (Doc. 106) ¶¶27, 46(g)). What Kozachik said was, as follows:

> I would just like to say while Mr. ...Clay is coming up, it'd sure be nice when people can come up to these microphones and start making their points without being so personally disrespectful. Not only, not only to the rest of the Council Members but to City staff. Make, make your point, but get off the, the personal attacks. And if you can't do that, then just keep your bile at home.

(DSOF (Doc. 153) ¶26 (citing Meeting Video 3:40 to 4:07 [9/7/11])). Then, Plaintiff began what the Mayor characterized as a personal attack on Richard Miranda, previously the

Deputy City Manager, who was the Acting City Manager as of September 9, 2011. (DSOF (Doc. 153) ¶27.)

On September 13, 2012, Warden got through the first approximate one minute of his speech, talking about Defendant Kozachik, (DSOF (Doc. 153) ¶32) (citing Meeting Video 7:35-8:01 [9/13/11]), then began speaking about Miranda and said: "Here's what the jury said. They said he (referring to Miranda) acted with an evil mind." (DSOF (Doc. 153) ¶34); (Warden Decl. (Doc. 151-1) ¶PSOF 3). Defendant Walkup interrupted Warden for making personal attacks, but Warden continued to speak, louder, talking over the Mayor, until the Mayor ended the Call to the Audience and called for the meeting to move forward with consideration of agenda items. Warden asked the Mayor, if he was under arrest. The Mayor responded: "no, no." Warden asked for an explanation, challenged the Mayor for stopping the Call to the Audience. In response, the Mayor nodded to officers to remove Warden from the council chambers. (DSOF (Doc. 153) ¶37 (citing Meeting Video 8:31-8:39 [9/13/11])); (P Resp, Ex. 2: TR 9/13/11 (Doc. 159-7) at ¶¶31-33).

In all, Warden held the floor for approximately three minutes.[3] Warden began with what the Mayor described as, personal attacks. First, he accused Kozachik, by his prior comments at the September 7 council meeting, of attempting to chill his speech, then raised the alleged "evil mind" of Miranda. When the Mayor interrupted him, Warden challenged the Mayor's right to preclude personal attacks. The video reflects without question that in response to the Mayor's attempts to stop Warden from using personal attacks while speaking, Warden became disruptive by continuing to argue with the Mayor so that the meeting could not proceed. It is undisputed that, at the Mayor's direction, acting as Chairman of the Council meeting, the Defendants Officers Sholl and Couch, acting as Sergeant at Arms, escorted Warden from the podium and out of the Mayor and Council Chambers. By Plaintiff's own admission and according to Warden's own allegation in his TAC, once he was removed from the chambers, Officer Couch told Warden to "Get out of here." (TAC (Doc. 106) ¶ 34). The question is whether the circumstances of being escorted

---

[3] Under the Rules of Speech, the Call to the Audience is limited to 30 minutes, and a person may speak no more than three minutes. (DSOF (Doc. 153) ¶11 (citing Rule M(3).)

- 7 -

from council chambers constituted a seizure in violation of the Fourth Amendment to the United States Constitution.

"A person has been ['], seized['] within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

In this case, there were simply no circumstances to even suggest a seizure. As alleged by the Plaintiff, he was ordered removed and escorted outside, where he was asked to leave. At most his freedom to do what he wanted, assumedly stay and continue speaking, was restrained, but that is not a seizure. *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994) (plaintiff was asked to leave, therefore, plaintiff was free to terminate the encounter at any time and leave; as a matter of law, there was no seizure and no arrest because plaintiff could terminate encounter anytime at his choosing), *compare United States v. Washington,* 490 F.3d 765, 772 (9th Cir. 2007) (seizure because a person in plaintiff's shoes would not have felt at liberty to terminate the encounter with the police and leave).

Here, the Plaintiff was free to leave at all times. "Mere removal from a governing body's meeting is not an arrest that can support a false arrest claim." (DMSJ (Doc. 152) at 5 (citing *Heaney v. Roberts*, 846 F.3d 795, 805–06 (5th Cir. 2017) (affirming summary judgment on false arrest claim where plaintiff was not arrested and never detained after leaving council chambers; also not a detention); *Laverdi v. Jenkins Township*, 49 F. App'x 362, 364 (3d Cir. 2002) (compliance with officer's escort from township council meeting is not a seizure); *Corr v. Springdale Borough*, 221 F. Supp. 3d 660, 668–69 (W.D. Pa. 2016) (same, citing *Laverdi*); *Youkhanna v. City of Sterling Heights*, 332 F. Supp. 3d 1058, 1070 (E.D. Mich. 2018) (no unlawful seizure where citizen escorted out of city council

- 8 -

meeting after being called out of order); *Price v. Peerson*, 2014 WL 12579823, at 8 (C.D. Cal. 2014), aff'd, 643 F. App'x 637 (9th Cir. 2016) (being escorted from courthouse not seizure); *Sheppard v. Beerman*, 18 F.3d 147, 153 (2d Cir. 1994) (same)).

2. The Rules of Speech did not violate his constitutional right to free speech under the First Amendment.

It is beyond debate that the law prohibits viewpoint discrimination in a limited public forum. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). The government can restrict or regulate speech in a limited public forum "as long as the regulation '(1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum.'" *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010) (quoting *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001)). Viewpoint discrimination exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995); *see also Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013) (noting that "a claim of viewpoint discrimination in contravention of the First Amendment requires a plaintiff to show that the defendant acted with a viewpoint-discriminatory purpose"). A reasonable restriction, such as a topic or time constraint, does not violate the Constitution. *Crawford–El v. Britton*, 523 U.S. 574, 593 (1998). Here, the Plaintiff violated a topic restriction; he was prohibited from making personal attacks.

When the government designates a limited public forum for speech, as is the case of a city council meeting, it may apply restrictions to the time, place, and manner of speech so long as those restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Jobe v. City of Catlettsburg*, 409 F.3d 261, 266 (6th Cir. 2005). Here, the manner/topic restriction of "no personal attacks" was neutral and did not preclude the Plaintiff from presenting his opinion; it reasonably prohibited the manner of the presentation.

The Plaintiff was not, however, removed from the Council meeting for making personal attacks on city officials while speaking. The Plaintiff was removed from council chambers when he became disruptive after the Mayor told him he could not make personal attacks on city officials. The video makes it quite clear that the Plaintiff's challenge to this restriction disrupted the Council meeting. The Mayor interrupted the Plaintiff: "Now you're, now you're into a personal [attack]." (DSOF (Doc. 153) ¶33 (citing Meeting Video 7:35-8:01 [9/13/11])). Warden responded: "Oh, absolutely. Absolutely, I'm there." (DSOF (Doc. 153) ¶34 (citing Meeting Video 8:04-8:39 [9/13/11])). And then, Warden pressed the personal attack, louder: "Here's what the jury said. He said he [referring to City Manager Richard Miranda] acted with an evil mind." *Id.*; *see also* (Warden Decl. (Doc. 151-1) ¶PSOF 3(same). The video reflects that the Plaintiff begins yelling over the Mayor, until the Mayor closes the Call to the Audience and directs the meeting to proceed to an agenda item. Plaintiff continues to challenge the Mayor for an explanation, threatens to sue the Mayor, and expressly asks if he is being arrested. (DSOF (Doc. 153) ¶34 (citing Meeting Video 8:04-8:39 [9/13/11])). The Plaintiff's behavior in pressing his assertion that he has a right to make personal attacks on city officials during a Call to the Audience can only be described as disruptive.

Speakers at Council meetings "are subject to restriction only when their speech 'disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting." (DMSJ (Doc. 152) at 10 (quoting *White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990) (upholding ejection of disruptive citizen from a city Council meeting)). Given the nature of a Council meeting, a speaker can become disruptive in ways that would not meet the test of an actual breach of the peace. *Id.* at 1425. "'A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies. The meeting is disrupted because the Council is prevented from accomplishing its business in a reasonably efficient manner. Indeed, such conduct may interfere with the rights of other speakers.'" *Id.* (quoting *White,* 900 F.2d at 1426). As explained in *White*: "While a speaker may not be stopped from speaking because the

- 10 -

moderator disagrees with the viewpoint he is expressing…[the moderator] certainly may stop him if his speech becomes irrelevant or repetitious." 900 F.2d at 1425. Moreover, "the point at which speech becomes unduly repetitious or largely irrelevant is not mathematically determinable," therefore "the role of a moderator involves a great deal of discretion." *Id.* at 1426; *Kindt v. Santa Monica Rent Control Bd.,* 67 F.3d 266, 272 (9th Cir. 1995) (removal of speaker permissible where speaker was disrupting the proceedings by yelling and trying to speak when it was not time for call to the audience). The Defendants are correct "'removing an individual from a public meeting does not violate the Constitution provided that the individual is sufficiently disruptive and is not removed because of his or her views.'" (DMSJ (Doc. 152) at 10) (quoting *Dehne v. City of Reno*, 222 F. App'x 560, 561-62 (9th Cir. 2007). There is no contravening evidence presented by the Plaintiff (he too relies on the meeting video)[4] that he was removed from the Council meeting on September 13, 2011, for any other reason than that he disrupted the meeting in response to the Mayor's assertion that he could not make personal attacks while speaking.

It is undisputed that he spoke multiple times at multiple Council meetings on the topic of the Gilmartin case, including complaining about Richard Miranda and other City Officials while he was speaking at a Call to the Audience. (DSOF (Doc. 153) ¶ 25 (citing Meeting Audio (9/7/11) (speaking full three minutes, plus on the subject)); ¶39 (citing Meeting Audio (9/20/11) (same)); ¶42 (citing Meeting Audio (9/27/11) (same)); ¶44 (citing Meeting Audio (10/25/11) (same)). All of these times, the Plaintiff spoke without incident. There is no evidence to support the Plaintiff's assertion that his removal from council chambers on September 13, 2011, was motivated by a desire to prevent him from speaking on the subject of the Gilmartin case, the settlement of the damage award or its satisfaction. The evidence is undisputed, except for Plaintiff's supposition, that Warden was removed because his objection to the prohibition against making personal attacks was disruptive.

For these same reasons, the Plaintiff's First Amendment retaliation claims fail. Such a claim requires proof of the following: 1) he engaged in constitutionally protected activity;

---

[4] PMSJ (Doc. 151) at exhibits (151-1) (151-7); PResp. (Doc. 159) at exhibits (159-5) (159-8).

- 11 -

2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity, and 3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010*).* To the extent the Plaintiff argues that his removal from the September 13, 2011, Council meeting was an adverse action and this action was taken because of his long history of speaking out against alleged City corruption and other ills, the Plaintiff cannot show his removal was in retaliation for exercising this alleged First Amendment right because the evidence without question shows he was removed from the Council meeting for disrupting it. *See Charnly v. S. Palm Beach*, 2015WL 12999749, *7-8 (Flor. March 23, 2015) (mere fact that the town meeting moderator, in some manner, limited the plaintiff's presentation standing alone does not burden a constitutional right) (relying on *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004)(relying on *City of Madison Joint Sch. Dist. v. Wis. Employment Relations Comm'n*, 429 U.S. 167, 175 n. 8 (1976) (finding restrictions placed on the plaintiff were necessary to stop his "repetitive and truculent" behavior constituted constitutional time, place, and manner regulation). The Court agrees with the logic in *Charnly*, such efforts are not adverse actions. The Plaintiff cannot show a substantial causal relationship between any protected free speech right and his removal from the September 13, 2011, Council meeting.

      The Plaintiff expressly alleges a freedom of speech violation by "Defendant Kozachik on or about September 7, 2011, when he spoke "stern words to deter plaintiff from future address to the mayor and Council." (TAC (Doc. 106) ¶43(a)). The Plaintiff does not provide the exact stern words that Defendant Kozachik allegedly spoke. The only evidence the Court has before it is the transcription from the September 7, 2011, Council meeting, as noted above, where Defendant Kozachik said, ". . . it'd sure be nice when people can come up to these microphones and start making their points without being so personally disrespectful. . . . Make, make your point, but get off the, the personal attacks.

And if you can't do that, then just keep your bile at home." *Supra above* (citing Meeting Video 3:40 to 4:07 [9/7/11])).

At the September 13, 2011, Council meeting, the Plaintiff's speech included commentary reflecting he took personal offense to these words. He said, "I know the comments last week made by Mr. Kozachik were directed at me. . . He's attempt[ing] and he probably has [chilled] public debate on these issues." (DSOF ¶32 (citing Meeting Video 7:35-8:01 [9/13/11])). The Court assumes that the generalized request by Defendant Kozachik for public civility, not even expressly aimed at the Plaintiff, were the stern words referred to by the Plaintiff in the TAC. The words spoken by Kozachik were not threatening, intimidating, or coercive, as is evident by Plaintiff's continued exercise of his right to speak at Council meetings without any apparent reticence. The Court finds, as a matter of law, that Kozachik's words did not have a chilling effect on the Plaintiff. *Mendocino Envtl. Ctr.*, 14 F.3d at 463 ("A plaintiff may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives."). Plaintiff's claim of retaliation is based on nothing more than pure speculation. See *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

3. Qualified Immunity.

Qualified immunity is assessed using a two-prong test: (1) whether defendant's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity is designed to protect an officer who, reasonably, but mistakenly, acts in violation of some constitutional right. An officer may prevail under either prong of the test. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity is a legal question, and it is addressed by the Court at the earliest possible point in the litigation. *Act Up/Portland*, 988 F.2d 868, 872-73 (9th Cir. 1993).

As explained above, removing an individual from a public meeting is not a seizure violating the Fourth Amendment and does not violate the First Amendment provided that

the individual is sufficiently disruptive and is not removed because of his or her views. Because no constitutional violations occurred here, the individually named Defendants are entitled to qualified immunity.

Even if the Court's constitutional conclusions were wrong, the officers are still entitled to qualified immunity because under the clearly established law at the time of the challenged conduct "every reasonable official would have understood that what the public officials did here did not violate the constitution. There exists no precedent which would have placed the constitutional questions raised in this case beyond debate. Any reasonable public official, including a Mayor moderating a Council meeting and police officers acting at his direction as Sergeant at Arms, would have believed that the Rule of Speech prohibiting personal attacks when speaking was a reasonable manner restriction and that they were constitutionally applying a neutral and facially constitutional Rule of Speech under the First Amendment. Likewise, such reasonable public officials would have believed that Plaintiff's conduct in response to this directive was disruptive and that he could be removed from the Council meeting for being disruptive without violating the First Amendment and would have believed escorting him from the council chambers was not a violation of the Fourth Amendment prohibition against seizing a person without probable cause. The Court has made this qualified immunity determination viewing the facts "in the light most favorable to the Plaintiff." *Katz*, 533 U.S. at 201. The individual Defendants are entitled to qualified immunity in this case.

4. *Monell* Claim: City of Tucson custom of retaliatory arrests.

Warden named the City of Tucson as a Defendant in Count One (TAC ¶¶ 14, 43(e)), because it "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval though the body's official decision-making channels." *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). According to Warden, the City has a "custom and practice" of "arrest, detention and release" to intimidate and retaliate against opponents and deter opposition to City policies (TAC (Doc. 106) ¶ 35).

"'Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.'" (DMSJ (Doc. 152) at 14 (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996)). Warden's *Monell* claim is, however, based on one single incident: his alleged false arrest on September 13, 2011 allegedly made in retaliation for his long history of exercising his First Amendment right to speak at Council meetings. The alleged long history of exercising his First Amendment right to speak at Council meetings without incident calls into question the assertion that the City has a custom of retaliatory arrest. The alleged single incident on September 13, 2011, is insufficient to support the assertion of an unconstitutional custom or practice. This is especially true, here, because the Court has rejected as a matter of law that any arrest or seizure occurred on September 13, 2011.

The Court grants the Defendants' Motion for Summary Judgement. Plaintiff's evidence is in large part mere speculation; "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Martinez v. Minnis*, 257 Fed.Appx. 261, 266 (11th Cir. 2007) (affirming summary judgment for defendant because plaintiff failed to offer any evidence to support his belief that defendant was motivated by a retaliatory animus in performing the shakedown search of plaintiff's person). Plaintiff fails, therefore, to "set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case." *Celotex*, 477 U.S. at 322. More importantly, the Plaintiff is wrong in his assertions of law. As explained above, constitutional law is contrary to Plaintiff's claims. The Defendants are entitled on matters of law to Summary Judgment.

**Accordingly,**

**IT IS ORDERED** that the Motion for Rulings and Oral Argument (Doc. 164) is GRANTED IN PART by the rulings issued here and DENIED IN PART as to the request for oral argument.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. 151) is DENIED.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 152) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly in CV 13-283 TUC DCB and 13-1067 TUC DCB.

Dated this 7th day of April, 2020.

Honorable David C. Bury
United States District Judge